United States Bankruptcy Court
Southern District of Texas

**ENTERED**

December 02, 2025

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 24-20119** |
| **CLINT MATTHEW WALLACE,** | § | |
| *et al.*, | § | **CHAPTER 7** |
| | § | |
| Debtors. | § | |
| | § | |
| **CLINT MATTHEW WALLACE,** | § | |
| *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | **ADVERSARY NO. 25-2001** |
| | § | |
| **TWO BOBCATS, INC.,** *et al.*, | § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM OPINION

The Wallaces filed this suit against Two Bobcats, Inc. for violations of the discharge injunction. A trial was held on September 4, 2025 to determine the amount of damages to be awarded.

The Court awards the Wallaces $1,885.00 in economic damages, $3,000.00 in emotional distress damages, $1,000.00 in punitive damages, and $36,458.08 in attorney's fees and expenses.

### JURISDICTION

The District Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(b). Venue is proper in this District pursuant to 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2). This dispute has been referred to the Bankruptcy Court under General Order 2012-6.

## DAMAGES

### I. ECONOMIC HARM

The Wallaces seek $1,885.00 for personal time and effort spent prosecuting their claim against TBI.  Courts have awarded debtors for compensation due to lost wages they incurred.  *See, e.g.*, *In re Ritchey*, 512 B.R. 847, 861 (Bankr. S.D. Tex. 2014) (awarding $1,373.10 to the debtors for their lost wages and their travel and parking expenses); *In re Meyers*, 344 B.R. 61, 66 (Bankr. E.D. Pa. 2006) (awarding lost wages for using one paid vacation day to appear at a hearing); *Chambers v. GreenPoint Credit (In re Chambers)*, 324 B.R. 326 (Bankr. N.D. Ohio 2005) (awarding lost wages for three days' worth of work to attend trial).  Such an award is necessary to encourage parties to defend and vindicate orders of the court.  *See In re Fauser*, 545 B.R. 907, 913 (Bankr. S.D. Tex. 2016).

The Wallaces both testified at Trial.  Both appeared credible and answered questions truthfully.  Mr. Wallace is in the insurance business and earns roughly $41 per hour.  He spent 35 hours on this case.  Ms. Wallace is a teacher at Seashore Charter School and earns $30 per hour.  She spent 15 hours on this case.

The calculation comes out to $1,885.00.  The Wallaces are awarded $1,885.00 for economic harm.

### II. EMOTIONAL DISTRESS

The Wallaces request emotional distress damages in the amount of $3,000.00.  To recover damages for emotional distress, a plaintiff must present specific evidence of emotional damage.  *In re Fauser*, 545 B.R. at 913.  A plaintiff may establish emotion damage through their own testimony, but it must be sufficiently "particularized and extensive" to meet the specificity threshold.  *Id.* (citing *Hitt v. Connell*, 301 F.3d 240, 250 (5th Cir. 2002)).  "Hurt feelings, anger and frustration are part of life, and are not the types of emotional harm that could support an award of damages."  *Connell*, 301 F.3d at 250.

At trial, Ms. Wallace testified that she experienced two panic attacks triggered by TBI's demand letter.  Each episode lasted ten

minutes.  She testified that her panic attacks manifested through symptoms of hyperventilation and difficulty breathing.  During the attacks, she forced herself to isolate so that her children would not witness the attacks.  Mr. Wallace testified that he lost sleep and experienced chest pressure.

The Court is not persuaded that Mr. Wallace's symptoms are sufficient for an award of damages.  But Ms. Wallace's symptoms are sufficiently particularized for an award of emotional distress damages. The Court awards $3,000.00 in emotional distress damages.

### III.  PUNITIVE DAMAGES

The Wallaces seek $3,000.00 in punitive damages for willful violation of the discharge injunction.  "[B]ankruptcy courts have the inherent power to punish parties for their contemptuous violation of the discharge injunction through the imposition of punitive damages."  *In re Chambers*, 324 B.R. 326, 332 (Bankr. N.D. Ohio 2005). The Fifth Circuit has yet to definitively address the appropriate standard for willful violations of the discharge injunction.  This Court has justified awarding punitive damages if a creditor's discharge violation constitutes egregious, intentional misconduct.  *In re Fauser*, 547 B.R. 907, 914–15 (Bankr. S.D. Tex. 2016); *see In re Repine*, 536 F.3d 512 (5th Cir. 2008) (applying the "egregious intentional misconduct" standard in the context of automatic stay violations); *In re Ritchey*, 512 B.R. 847, 863 (Bankr. S.D. Tex. 2014) (requiring the debtor to demonstrate "malevolent intent" on the part of the discharge violator).

Here, there are two separate willful violations of the discharge injunction.  The first violation occurred when TBI sent the September 6, 2024 demand letter to the Wallaces' personal bankruptcy attorney, Joel Gonzalez.  The email and demand letter addressed both Mr. and Ms. Wallace.  At trial, for the first time, it was disclosed that Mr. Eisweirth, the attorney for TBI, blind carbon copied the Wallaces to the email containing the demand letter.  Charles Newton, attorney for the Wallaces with respect to this adversary proceeding, learned that fact for the first time the day before trial.  At the close of trial, the Court

required supplemental briefing on the issue of whether blind carbon copying a client to an email containing a formal demand letter is a direct communication prohibited by the Texas Disciplinary Rules of Professional Conduct ("TDRPC").

TDRPC Rule 4.02(a) provides:

In representing a client, a lawyer shall not communicate or cause or encourage another to communicate about the subject of the presentation with a person, organization, or entity of the government the lawyer knows to be represented by another lawyer regarding that subject, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

Comment 1 further explains that this Rule is:

directed at efforts to circumvent the lawyer-client relationship existing between other persons, organizations or entities of government and their respective counsel.  It prohibits communications that in form are between a lawyer's client and another person, organization or entity of government represented by counsel where, because of the lawyer's involvement in devising and controlling their content, such communications in substance are between the lawyer and the represented person, organization or entity of government.

TCRPC Rule 4.02(a) cmt. 1.  A December 2011 Opinion issued by the Texas Professional Ethics Committee illustrates the breadth of Rule 4.02(a).  There, the Committee held that a Texas lawyer retained by an insurance company to represent the insured cannot send written notice of settlement payment directly to the claimant (who is represented by another lawyer), *without consent of opposing counsel.*  Tex. Comm. On Professional Ethics, Op. 613 (2011).

Here, Attorney Gonzalez did not consent to Attorney Eisweirth sending a blind carbon copy of the demand directly to the Wallaces. Eisweirth asserts that the Wallaces were not represented persons under

the Rule because Gonzales' representation of the Wallaces terminated once they received their discharge.  ECF No. 61 at 2.

Eisweirth's assertion is unavailing.  Eisweirth emailed Gonzalez a copy of the Demand Letter.  ECF No. 24-4 at 6.  Eisweirth then exchanged email correspondence with Gonzalez.  A September 6, 2024 email from Eisweirth reads: "A phone call is unnecessary.  You can convey the demand **to your clients**.  I will not tolerate your nonsense." ECF No. 24-4 at 2 (emphasis added).    Having treated Gonzalez as counsel for the Wallaces when transmitting the Demand Letter, Eisweirth cannot now disavow the relationship because it no longer suits him.  The Court will not permit Eisweirth to reverse course at the eleventh hour.

Eisweirth's decision to blind carbon copy the Wallaces to the demand email was undertaken in bad faith.  In discerning Mr. Eisweirth's "bad faith" state of mind, the Court has also reviewed his contemporaneous communications with Mr. Gonzalez:

> "Ahh yes, play dumb.  Will work wonders.  Or…are you not playing?"  ECF No. 50-2 at 4.

> [Following Eisweirth's sending of the demand that violated the discharge injunction]: "A phone call is unnecessary.  You can convey the demand to your clients.  I will not tolerate your nonsense."  ECF No. 50-2 at 4.

> "Please read the letter closely.  You are an attorney.  It's quite literally your job. . . .  Do your job, Joel."  ECF No. 50-2 at 6.

When a client is sent a BCC from opposing counsel, the client's lawyer could not know whether the client has been included.  While Gonzelez was the direct recipient of the demand email, Eisweirth simultaneously chose to go around Gonzalez.  The BCC is an intentional circumvention of the lawyer-client relationship.

This conduct reflects a willful disregard of both the discharge injunction and the professional ethical duties lawyers must uphold.  The

combination of both violations is evidence of egregious misconduct sufficient to support punitive damages in the amount of $500.00.

The second violation occurred when Eisweirth filed a JAMS arbitration demand on October 7, 2024. Courts award punitive damages in cases of repeated discharge violations. In *In re Fauser*, this Court awarded punitive damages to the debtor after the creditor called the debtor and sent five letters to collect on the debt owed. *Fauser*, 545 B.R. at 916 (awarding the debtor $500.00 per occurrence of discharge violation). In *In re Mooney*, the Court awarded $40,000.00 in punitive damages against the creditor for "harass[ing] the debtor through repeated telephonic communications . . . and through court action . . . ." *In re Mooney*, 340 B.R. 351, 361 (Bankr. E.D. Tex. 2006).

Here, Eisweirth was aware of the discharge injunction. Despite knowledge of the discharge and sending a demand letter in violation of the discharge, Eisweirth submitted an arbitration demand against Mr. Wallace on October 7, 2024. ECF No. 50-3. The arbitration demand was an act to collect on a discharged prepetition debt. The demand was dismissed by the Arbitrator because of the discharge. ECF No. 50-6.

Because the arbitration demand is a repeated discharge violation, the Wallaces are awarded an additional $500.00. In total, the Wallaces are awarded a total of $1,000.00 in punitive damages for TBI's willful and egregious conduct.

## IV.   ATTORNEYS' FEES

The Wallaces ask the Court to award a total of $36,458.08 for attorney's fees and expenses. ECF Nos. 50-8, 50-9. $4,813.32 of the aggregate amount is attributed to Gonzalez's time spent on the case. $31,654.76 is attributable to the Newtons' time spent on the case.

The calculation of attorney's fees under federal law is well-established. Attorney's fees are awarded based on the lodestar method of computation. *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998). First, the court calculates the lodestar fee by multiplying the reasonable number of hours expended on the case by the reasonable

hourly rates for the participating lawyers.  *Id.*  Next, the court considers whether to make a lodestar adjustment upward or downwards depending on the circumstances of the case.

The reasonableness of attorney's fees is evaluated by the *Johnson* twelve factor test.  *Johnson v. Ga. Highway Exp., Inc.*, 466 F.2d 714, 717–19 (5th Cir. 1974) (time and labor required, novelty and difficulty of the questions, requisite skill to perform legal service, preclusion of other employment by the attorney, customary fee, contingent or fixed fee, time limitations, amount involved and results obtained, experience and ability of the attorneys, "undesirability" of the case, nature and length of relationship with client, and awards in similar cases).

At the September 4 Trial, the Wallaces' attorneys, Gonzalez, Charles Newton, and Jane Newton testified at length concerning the attorney's fees accrued throughout the course of prosecuting this adversary proceeding.

Gonzalez testified that he has practiced consumer bankruptcy since 2007, charges $375 per hour, and maintained contemporaneous time entries.  Gonzalez further testified that Mr. Wallace's father-in-law paid his firm $2,000.00 and Mr. Wallace seeks recoupment of that payment along with the balance of the attorney's fees.

Eisweirth argues that Gonzalez's fees should not be awarded because it was not spent on responding to the Demand Letter or the arbitration demand.  Based on Gonzalez's billing records, Gonzalez's post-discharge work primarily entailed responding to Eiswerth's motion to extend deadline to object to discharge under 11 U.S.C. § 523(a)(3)(A). Ordinarily, a debtor cannot seek recovery of attorney's fees not incurred as a direct result of the discharge violation.  But Eisweirth had already committed post-discharge collection efforts, and his § 523 extension motion was merely continuation of an attempt to collect payment on a discharged debt.  Eisweirth's intent on filing his § 523 extension motion is clear by the following email correspondence to Gonzalez:

> Please read the letter closely.  You are an attorney.  It's quite literally your job.

7 / 8

> The debt was incurred through fraudulent means and therefore non-dischargeable.  Should the Wallaces fail to pay my client—as explicitly stated in the letter (I've attached it again for ya)—**that we will seek an exception to discharge**.
>
> Do your job, Joel.

ECF No. 41-12 at 4–5 (emphasis added). This communication makes clear that the threat of a § 523 action was conditioned on immediate payment.  Because the extension motion was used as leverage in Eisweirth's post-discharge collection efforts, Gonzalez's response was necessary to avoid further discharge violations.  His fees are awarded in full.

Charles Newton has practiced bankruptcy law since the 1990s and specializes in stay and discharge injunction litigation. He charges $440 per hour.  Jane Newton and Patricia Newton also worked on this case at $440 and $340 an hour respectively.  ECF No. 50-9.  Upon review of the records detailing the dates, amounts, and services provided as well as the hourly rates charged, the Court finds that attorneys' fees and expenses are both reasonable and appropriate and will award the total amount sought.

## CONCLUSION

A separate order will be entered.

SIGNED 12/02/2025

_____
Marvin Isgur
United States Bankruptcy Judge

8 / 8